[No. F034292. Fifth Dist. July 11, 2000.]

ROSE CATALANO, Individually and as Executor, etc., et al., Petitioners,
v.
THE SUPERIOR COURT OF FRESNO COUNTY, Respondent;
DAVID M. CAMENSON et al., Real Parties in Interest.

**COUNSEL**

Bruce Albion Bailey for Petitioners.

No appearance for Respondent.

Robie & Matthai, Edith R. Matthai, Pamela E. Dunn, Gabrielle M. Jackson and Elizabeth E. Karnes for Real Parties in Interest.

**OPINION**

**VARTABEDIAN, Acting P. J.**—It is settled, and not disputed by the parties, that a claim for punitive damages is one of the substantive areas which is properly the subject of a motion for summary adjudication. (*De-Castro West Chodorow & Burns, Inc. v. Superior Court* (1996) 47 Cal.App.4th 410, 421 [54 Cal.Rptr.2d 792].) In this writ of mandate proceeding, we must answer a question of first impression: Is a motion for summary adjudication regarding punitive damages properly granted when the resulting determination adjudicates only some of the asserted facts relating to the claim but does not dispose of the entire claim for punitive damages? We conclude summary adjudication is not properly granted as a piecemeal disposition of some of the asserted facts within a claim for punitive damages, but may only be granted when an entire claim for punitive damages is eliminated.

### FACTUAL AND PROCEDURAL HISTORY

John and Rose Catalano were represented on a contingent fee basis by the law firm of Bostwick & Tehin in an action to dissolve several corporate and

partnership interests. The retainer agreement provided that the law firm of Baker, Manock & Jensen (BM&J), one of the real parties in interest herein,[1] would also represent Rose and John and would receive one-third of the contingent fee collected by Bostwick & Tehin. The litigation was settled. As a result, John and Rose received certain property.

John and Rose had a falling-out with Bostwick & Tehin, but BM&J continued to represent John and Rose and successfully foreclosed on property given as security for the money owed them from the settlement. In early 1994, John and Rose, with the assistance of BM&J, transferred the bulk of their assets which they received in the settlement, consisting of real property held in the corporation of Nees Avenue Orchard, Inc. and another parcel of real property, to their children Sam and Darlene. BM&J continued to do work for John and Rose and for Darlene and Sam. In April of 1995, Sam and Darlene signed an hourly fee contract with BM&J backdated effective June of 1993.

David M. Camenson, an attorney with BM&J, urged and advised Darlene and Sam to enter into a sales agreement to sell two pieces of real property, which we will refer to as the Nees property and the Peach property, to R.L. Adolph Associates, Inc. The agreement provided that after several deposits the balance of the purchase price would be paid pursuant to a promissory note secured by a deed of trust encumbering the Peach property. The firm of BM&J was familiar with Rob L. Adolph, having represented his former wife, Leta, in a dissolution matter in which he was the opposing party. The firm continued representing Leta Adolph on issues of support.

The initial sales agreement fell through. With the advice of Camenson, Darlene and Sam entered into a limited partnership agreement with R. L. Adolph Associates, Inc. Darlene and Sam each invested a portion of their interest in the Peach property in exchange for a partnership interest. The Nees property and the remaining portion of the Peach property were sold to the partnership, generating a payment of approximately $500,000 to Darlene and Sam. Several days after receiving their cash payment, they were presented with a bill by Camenson for fees owed to BM&J. Darlene and Sam paid BM&J approximately $140,000. The limited partnership failed and the bank foreclosed on the Peach property.

Meanwhile, Bostwick & Tehin filed suit against Rose and John for attorney fees under the original contingent fee contract. Rose (individually and acting as executor of the estate of John), Darlene, Sam, and Kathy Catalano (Sam's wife) filed a cross-complaint against BM&J and others. The

---

[1]Real parties in interest shall be referred to collectively as BM&J unless otherwise noted.

ninth cause of action alleges a fraudulent breach of fiduciary duty. The 11th cause of action alleges intentional misrepresentation.[2]

Catalanos, seeking punitive damages,[3] amended their cross-complaint to add allegation No. 149. This general allegation contains alleged instances of conduct purporting to warrant punitive damages. The instances alleged include a claim that Camenson induced Sam and Darlene to sign a contract in April of 1995 predated to June 30, 1993, in order to charge Sam and Darlene hourly fees which were previously properly allocated to the contingent fee contract. The amendment also alleges that BM&J double-billed between the contingent fee contract and the hourly fee contract, and also double-billed the Nees Avenue Orchards, Inc., corporation and Darlene and Sam individually. The next area of conduct alleged covers the claim that BM&J represented to Darlene and Sam that Adolph was an appropriate purchaser for their property when in fact BM&J knew of adverse information regarding Adolph because BM&J represented Adolph's former wife in divorce proceedings. Additionally, it is claimed that BM&J intentionally concealed a conflict of interest because of their representation of Leta, and in fact they obtained a judgment and a writ of execution in favor of Leta against the Peach property after it was transferred to the limited partnership and Adolph. Finally, the amendment alleges numerous risks were not disclosed by BM&J in recommending the limited partnership transaction including that, unlike their original agreement to sell the property, the Catalanos would no longer retain the Peach property as security for their investment in the limited partnership.

BM&J filed a motion for summary adjudication of the claim by the Catalanos for punitive damages. The motion was presented as five separate issues: (1) There was no conversion of the contingency agreement to an hourly fee agreement, (2) there was no double-billing, (3) the claim regarding the financial condition of Adolph is without merit because the property was sold to the corporation and at the time of the sale Adolph individually and his corporation had substantial assets, (4) there was no conflict of interest, and (5) the limited partnership was explained to Sam and Darlene and they understood it.

The trial court followed the format propounded in BM&J's motion, ruling separately on each factual allegation. The trial court granted summary adjudication of the first four issues (as set forth above) and denied summary adjudication on the fifth issue. In addition, the trial court granted BM&J's motion for summary adjudication on all causes of action as to Kathy

---

[2]These are the only two causes of action relevant to the petition here.

[3]We shall refer to petitioners collectively as Catalanos unless noted otherwise.

Catalano, Sam's wife, because it found the property at issue was the separate property of Sam and Kathy had no interest in it.

Catalanos filed a petition for writ of mandate, challenging the trial court's partial granting of the summary adjudication motion. Catalanos claim the trial court erroneously granted summary adjudication on the allegations based on conversion of the fee agreement and concealment of Adolph's financial difficulties. Although Catalanos maintain the conflict of interest and double-billing allegations have merit, they chose not to pursue those rulings in their petition. Kathy Catalano has not challenged the granting of the summary adjudication against her.

BM&J filed a response to Catalanos' petition and a separate petition for writ of mandate in *Camenson v. Superior Court*, F034452. We issued an order staying the trial in superior court. By our nonpublished opinion filed June 29, 2000, in case No. F034452, we denied BM&J's petition for writ of mandate, finding that the trial court properly denied summary adjudication based on facts presented that BM&J failed to disclose to Darlene and Sam certain risks of the limited partnership. We take judicial notice of our file in case No. F034452 and judicial notice of the opinion.

We issued an order to show cause in the present case and now grant the petition, finding that Code of Civil Procedure section 437c, subdivision (f) disallows piecemeal adjudication of a claim for punitive damages.[4]

## DISCUSSION

Code of Civil Procedure section 437c, subdivision (f)(1) provides: "A party may move for summary adjudication as to one or more causes of action within an action, one or more affirmative defenses, one or more claims for damages, or one or more issues of duty, if that party contends that the cause of action has no merit or that there is no affirmative defense thereto, or that there is no merit to an affirmative defense as to any cause of action, or both, or that there is no merit to a claim for [punitive] damages, as specified in Section 3294 of the Civil Code, or that one or more defendants either owed or did not owe a duty to the plaintiff or plaintiffs. A motion for summary adjudication shall be granted only if it completely disposes of a cause of action, an affirmative defense, a claim for damages, or an issue of duty."

Although there are no cases on point discussing how Code of Civil Procedure section 437c, subdivision (f)(1) operates in cases involving punitive damages, cases discussing Code of Civil Procedure section 437c, subdivision (f)(1) are useful in our analysis.

---

[4]By letter sent in advance of oral argument, we notified the parties of this precise concern.

In *Lilienthal & Fowler v. Superior Court* (1993) 12 Cal.App.4th 1848 [16 Cal.Rptr.2d 458], the real parties in interest filed a complaint for legal malpractice. The complaint contained two causes of action, one for breach of contract and one for negligence. The petitioners provided legal services to the real parties at different times on two separate and distinct matters. The complaint combined these matters in each cause of action. Petitioners filed a motion for summary adjudication claiming that proceeding on one of the matters was barred by the statute of limitations. The trial court refused to rule on the merits of the summary adjudication motion because an adjudication would not have disposed of an entire cause of action within the complaint.

"Cause of action" means " 'a group of related paragraphs in the complaint reflecting a *separate theory* of liability.' " (*Lilienthal & Fowler v. Superior Court, supra,* 12 Cal.App.4th at p. 1853, italics in original.) The appellate court found the clear intent of Code of Civil Procedure section 437c, subdivision (f) is " 'to stop the practice of adjudication of facts or adjudication of issues that do not completely dispose of a cause of action or defense.' " (12 Cal.App.4th at p. 1853.) Code of Civil Procedure section 437c, subdivision (f) was meant to "eliminate summary adjudication motions that would not reduce the costs and length of litigation." (12 Cal.App.4th at p. 1853.) The appellate court noted the following comment, which was written by the Senate Committee on the Judiciary when Code of Civil Procedure section 437c, subdivision (f) was amended in 1990: " 'According to the sponsor, it is a waste of court time to attempt to resolve issues if the resolution of those issues will not result in summary adjudication of a cause of action or affirmative defense. Since the cause of action must still be tried, much of the same evidence will be reconsidered by the court at the time of trial. This bill would instead require summary adjudication of issues only where an entire cause of action, affirmative defense or claim for punitive damages can be resolved. [¶] . . . [¶] The sponsor believes that the bill will save court time, reduce the cost of litigation for plaintiffs and defendants, and reduce the opportunity for abuse of the summary judgment procedure.' The August 1990, report of the Assembly Committee on Judiciary adopted the Senate's analysis." (*Lilienthal & Fowler v. Superior Court, supra,* 12 Cal.App.4th at pp. 1853-1854.)

The appellate court in *Lilienthal* found that the policy behind summary adjudication motions, "to 'promote and protect the administration of justice, and to expedite litigation by the elimination of needless trials,' " was not effectively served by the trial court's ruling. " '[The] statement and the wording of subdivision (f) show clearly that the Legislature wished to narrow summary adjudication from its broad focus on "issues" (sometimes

interpreted to mean only asserted "facts") to a more limited focus on causes of action, affirmative defenses, claims for punitive damages and claims that defendants did not owe plaintiffs a duty.' " (*Lilienthal & Fowler v. Superior Court, supra,* 12 Cal.App.4th at p. 1854.) Although each claim was joined with the other claim within each cause of action, the claims were in fact separate and distinct causes of action, having no relationship to each other. Thus Code of Civil Procedure section 437c, subdivision (f) could properly be utilized to challenge the separate and distinct matter even though the real parties in interest combined it with an unrelated matter in the same cause of action. (12 Cal.App.4th at pp. 1854-1855.)

The appellate court in *Linden Partners v. Wilshire Linden Associates* (1998) 62 Cal.App.4th 508 [73 Cal.Rptr.2d 708] agreed with the reasoning found in the *Lillienthal* case. Although disagreeing with *City of Emeryville v. Superior Court* (1991) 2 Cal.App.4th 21 [2 Cal.Rptr.2d 826] and *Regan Roofing Co. v. Superior Court* (1994) 24 Cal.App.4th 425 [29 Cal.Rptr.2d 413] on the parameters of a summary adjudication involving a question of duty, *Linden* is in accord with all these cases on the basic concept that summary adjudication is meant to dispose of an entire substantive area.

Although a claim for punitive damages is specifically set forth as an area which may properly be the subject of summary adjudication, in keeping with the purposes of Code of Civil Procedure section 437c, subdivision (f), a grant of summary adjudication in this area must cover the entire claim. The purpose of the enactment of Code of Civil Procedure section 437c, subdivision (f) was to stop the practice of piecemeal adjudication of facts that did not completely dispose of a substantive area.

Darlene and Sam's theory for the imposition of punitive damages is that BM&J fraudulently promoted the transaction with Adolph by methods of intentional misrepresentation and/or concealment of material facts with the end goal of collecting attorney fees owed by Catalanos based on the contingent fee contract and other work. Yet the trial court, following the format of BM&J's motion for summary adjudication, rendered a decision which disposed of certain factual allegations without disposing of the entire claim for punitive damages. Such piecemeal adjudication of factual allegations supporting a claim for punitive damages is prohibited by Code of Civil Procedure section 437c, subdivision (f)(1) unless the entire claim for punitive damages can be eliminated. Unlike the claims in *Lilienthal*, which were completely separate and distinct, having nothing to do with one another, the claim for punitive damages here is based on an interrelated set of facts and circumstances. If any one or more of the facts would support a claim for

punitive damages, then summary adjudication is not available to eliminate from trial other facts relating to the claim for punitive damages.[5]

The trial court erred in disposing of the punitive damage claim in piecemeal fashion. We previously held in *Camenson v. Superior Court, supra,* No. F034452 that the trial court properly denied summary adjudication on the factual allegation that BM&J failed to advise Darlene and Sam of the risks associated with the limited partnership. Because the claim for punitive damages was alive, the motion for summary adjudication on the punitive damage claim should therefore have been denied in its entirety. It is thus not necessary to determine the individual viability of the remaining allegations.[6]

### DISPOSITION

Let a peremptory writ of mandate issue directing respondent superior court to vacate its order of November 1, 1999, granting partial summary adjudication and enter an order denying summary adjudication with regard to punitive damages. The order granting summary adjudication as to Kathy Catalano remains as ordered. The stay issued by this court is lifted. Costs are awarded to petitioners. BM&J's request for sanctions is denied.

Thaxter, J., and Buckley, J., concurred.

The petition of real parties in interest for review by the Supreme Court was denied October 18, 2000.

---

[5]Because the issue is not presented in this case, we need not decide if summary adjudication must eliminate all claims for punitive damages in one action when there are separate and distinct claims for punitive damages, having nothing to do with one another, yet they are contained within one complaint.

[6]Catalanos alleged punitive damages as to the ninth and eleventh causes of action; they did not divide their factual allegations between the two claims but it appears they alleged all punitive damage factual allegations as duplicative for each cause of action in the form of a single claim. The parties have not argued otherwise.